No. 03-758

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 227

IN THE MATTER OF S.R., R.R., and G.R. Jr.,

Youths in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 2001-075,
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Nancy G. Schwartz, Attorney at Law, Billings, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney; Richard S. Helm, Deputy
County Attorney, Billings, Montana

Patrick E. Kenney, Attorney at Law, Billings, Montana (Guardian ad Litem)

Submitted on Briefs: May 11, 2004

Decided: August 24, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    G.R. Sr. appeals the termination of his parental rights.  We affirm.

¶2    The issue presented on appeal is:  Did the State present sufficient evidence under the Indian Child Welfare Act (ICWA) to terminate G.R. Sr.'s parental rights?

### Factual and Procedural Background

¶3    G.R. Jr., S.R., and R.R. are enrolled members of the Northern Cheyenne Tribe because of their mother A.R.'s ancestry.  The children were adjudicated youths in need of care by court order in June 2002.  A hearing on a petition for permanent legal custody and termination of parental rights with right to consent to adoption was conducted in May 2003, based on a petition filed by Montana Department of Public Health and Human Services, Child and Family Services Division (the Department).

¶4    Both A.R. and the father, G.R. Sr., were served by publication with a notice of the petition and the order setting the hearing date.  Neither parent personally attended the hearing, although the record indicates both were represented at the hearing by court-appointed attorneys.  After the hearing, both parents' parental rights were terminated.  A.R. does not appeal this decision.  G.R. Sr. appeals the termination of his parental rights.

¶5    G.R. Sr. claims that the Department took insufficient steps to assist him with his treatment plan tasks.  He claims that the Department did not "present sufficient evidence that active efforts were made to prevent the breakup of this Indian family."  G.R. Sr. also contends that the majority of the evidence presented concerned the children's mother, not

2

him.  He asserts the Department failed to prove, beyond a reasonable doubt, that continued custody with him was likely to result in serious emotional or physical harm to his children.

¶6      The Department's evidence in support of termination of parental rights included deposition testimony from Edith Adams (Adams), a qualified expert for purposes of the ICWA in Indian child-rearing practices, particularly Northern Cheyenne tribal practices and customs.  Adams testified that the conduct and behavior of A.R. and G.R. Sr. was not consistent with Northern Cheyenne tribal child-rearing practices.  She testified that the parents' conduct and behavior caused the Department to remove the children from the parents' care and custody.  She also testified that it was her opinion that if the children were left in the parents' care, it would likely result in serious emotional or physical damage to the children.

¶7      Social worker Heidi Kimmet (Kimmet) testified that the Department developed four treatment plans for G.R. Sr.  All the plans were court-approved.  These four plans covered a time period from February 28, 2002, until July 31, 2003.  G.R. Sr. signed the third and fourth treatment plans.  Kimmet testified that G.R. Sr. did not comply with his treatment plans because he did not complete the goals and tasks contained in the plans.  Based on the evidence presented, the court determined that G.R. Sr. "appears to be unfit, unable or unwilling to parent these children and that condition is unlikely to change within a reasonable period of time."

¶8      The children were in foster care under the physical custody of the Department for fifteen of the twenty-two months prior to the hearing.  The court determined that G.R. Sr.

3

had not completed his treatment plans and that the Department presented evidence to establish beyond a reasonable doubt that continuation of the parent-child relationship between G.R. Sr. and the children would likely result in continued abuse and neglect and would likely cause serious emotional or physical damage to the children. As a result, the court determined that termination of G.R. Sr.'s parental rights would serve the best interests of the children. The court stated that "[i]t has been established that the Department has made reasonable efforts under the circumstances to reunite" the children with their natural parents. After considering "all reasonable efforts to rehabilitate" the parents and to reunite them with the children, the court gave primary consideration to the physical, mental, and emotional needs of the children. The court then concluded that termination of the parent-child legal relationship was proper pursuant to § 41-3-609(1)(f), (2), and (3), MCA (2001).

## Discussion

¶9 Did the State present sufficient evidence under the ICWA to terminate G.R. Sr.'s parental rights?

¶10 A district court's decision to terminate parental rights is discretionary, and we review that decision to determine whether the court abused its discretion. *Matter of M.R.G.*, 2003 MT 60, ¶ 6, 314 Mont. 396, ¶ 6, 66 P.3d 312, ¶ 6. To do this, we determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Matter of M.R.G.*, ¶ 6. "A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the

4

district court made a mistake." *Matter of K.S.*, 2003 MT 212, ¶ 8, 317 Mont. 88, ¶ 8, 75 P.3d 325, ¶ 8.

¶11    The ICWA provides that "[n]o termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). "Any party seeking termination of parental rights . . . shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d).

¶12    The Department supported its petition to terminate G.R. Sr.'s parental rights with testimony from Adams, a qualified ICWA expert, as required by 25 U.S.C. § 1912(f). She testified that neither parent met tribal cultural standards for parenting. She testified that if the children were returned to either parent for care, they would be exposed to serious emotional and physical damage. Social worker Kimmet also provided testimony that continued custody would likely result in further abuse and neglect.

¶13    The record reflects that the Department provided remedial services and rehabilitative programs designed to prevent the breakup of the Indian family through the treatment plans it provided to G.R. Sr. 25 U.S.C. § 1912(d). However, G.R. Sr. did not complete these treatment plans, and the Department's efforts were thus unsuccessful.

5

¶14    The Department presented evidence beyond a reasonable doubt, including the testimony of qualified expert witness Adams and that of social worker Kimmet, that the continued parental custody of the children would result in serious emotional or physical damage to the children. 25 U.S.C. § 1912(f). The children have lived in foster care continuously since August 2001. Section 41-3-604(1), MCA, states that if a "child has been in foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Therefore, based solely on the amount of time the children have been living in foster care, the best interests of the children are presumed to be served by termination of G.R. Sr.'s parental rights. Section 41-3-604(1), MCA.

¶15    G.R. Sr. has not shown that the Department failed to make active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. 25 U.S.C. § 1912(d). The Department provided sufficient evidence that these efforts were taken and that they were unsuccessful. 25 U.S.C. § 1912(d). The testimony presented at the hearing provided sufficient support for the court to determine, beyond a reasonable doubt, that the best interests of the children would be served by terminating both parents' parental rights. 25 U.S.C. § 1912(f).

¶16    We hold that the court's findings of fact are not clearly erroneous, the findings are supported by substantial evidence and the District Court did not misapprehend the effect of the evidence. *Matter of K.S.*, ¶ 8. After reviewing the record, this Court is not left with a definite and firm conviction that the District Court made a mistake. *Matter of K.S.*, ¶ 8.

¶17    We affirm.


                                        /S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE